# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN J. WATERS, JR., *et al.*,

    Plaintiffs,

    v.

ARMENIAN GENOCIDE MUSEUM &
MEMORIAL, INC., *et al.*,

    Defendants.

Civil Action No. 08-1254 (CKK)

## MEMORANDUM OPINION
(March 9, 2010)

This is the third of three related cases pending before this Court that arises out of a very bitter and very unfortunate dispute between Plaintiffs John J. Waters Jr. ("Waters Jr."), Gerard L. Cafesjian ("Cafesjian"), The Cafesjian Family Foundation, Inc. ("CFF"), and the TomKat Limited Partnership ("TomKat") (collectively, "Plaintiffs") and Defendants Armenian Assembly of America, Inc. (the "Assembly") and Armenian Genocide Museum & Memorial, Inc. ("AGM&M") (collectively, "Defendants"), relating to the construction of an Armenian genocide museum and memorial in Washington, D.C. In the above-captioned case, Plaintiffs have asserted twelve separate claims for declaratory relief against Defendants. Currently pending before the Court is Defendants' [78] Motion for Partial Summary Judgment with respect to Count I of the Amended Complaint seeking a declaration that Cafesjian and Waters Jr. have not breached any fiduciary duty to AGM&M or the Assembly and with respect to Count VIII of the Amended Complaint seeking a declaration that CFF is entitled to remain an AGM&M Trustee controlling three votes. Briefing on this motion has been completed, and the motion is ripe for adjudication.

For the reasons explained below, the Court shall DENY Plaintiffs' partial motion for summary judgment.

## I.   BACKGROUND

The facts underlying the parties' disputes have been thoroughly laid out in this Court's opinions regarding summary judgment stage in the two related cases pending before this Court. *See Armenian Genocide Museum & Memorial, Inc. v. The Cafesjian Family Foundation*, No. 07-1259 (D.D.C. Mar. 9, 2010) ("*Cafesjian I*") (granting in part and denying in part the parties' cross-motions for summary judgment); *Armenian Assembly of America, Inc. v. Cafesjian*, No. 08-255 (D.D.C. Mar. 9, 2010) ("*Cafesjian II*") (same).  In *Cafesjian I*, AGM&M brought a claim against Cafesjian and Waters Jr. for breach of fiduciary duty and also brought claims for declaratory relief and quiet title relating to certain interests held by Cafesjian and CFF in property owned by AGM&M.  In *Cafesjian II*, AGM&M and the Assembly brought claims against Cafesjian and Waters for breach of fiduciary duty, breach of contract, misappropriation of trade secrets, and also brought various other claims for declaratory relief.  The claims for declaratory relief brought by Plaintiffs in this action pertain to the same controversies being litigated in *Cafesjian I* and *Cafesjian II*.  The Court shall not provide a full recitation of facts herein because Plaintiffs' motion for partial summary judgment raises only a few narrow issues that have already been considered and addressed in the two related cases.  However, a brief summary of the relevant facts is recited below.

In the late 1990s, the Assembly, an Armenian-American advocacy group, began exploring possible sites to create a museum devoted to the Armenian genocide.  With the help of donations from Cafesjian (through CFF), the Assembly purchased the National Bank of Washington

building in Washington, D.C. (the "Bank Building").  Cafesjian subsequently purchased (through TomKat) several lots adjacent to the Bank Building and decided to donate these lots to the museum project, which was to be run by an independent entity, AGM&M.  In October 2003, AGM&M was formally incorporated, and Cafesjian became one of four initial Trustees on the AGM&M Board of Trustees, each appointed by an initial donor.  Pursuant to the AGM&M By-Laws, each initial donor may appoint one Trustee for every $5 million contributed to the corporation.  *See* Defs.' Br., Ex. 6 (By-Laws) § 2.5.  Unless otherwise provided in the By-Laws or the Articles of Incorporation, all Board actions must be decided by an 80% affirmative vote. *Id.* § 2.7.  Cafesjian became the first Chairman and President of AGM&M, and Waters Jr. became the first Secretary/Treasurer.

On November 1, 2003, the Assembly executed a Grant Agreement with CFF and Cafesjian that memorialized their donations to the museum project and placed restrictions on the use of the donated funds.  *See* Defs.' Br., Ex. 12 (Grant Agreement).  The Grant Agreement memorialized an initial donation of $3.5 million to help acquire the Bank Building and a second donation of approximately $12.85 million to purchase the properties adjacent to the Bank Building that Cafesjian had acquired.  The Grant Agreement provided that the donated funds could only be used as part of the Museum, subject to plans approved by the Board of Trustees. *See* Grant Agreement § 3.1.  The Agreement also included a termination and reversion clause, stating that if the properties acquired with the donated funds were not developed prior to December 31, 2010 in substantial compliance the Board's plans, the properties would revert to Cafesjian and CFF.  *See id.* § 3.1(B).

On the same day, the Assembly and AGM&M entered into a Transfer Agreement, under

which the Assembly agreed to transfer all its assets for the museum project to AGM&M.  *See* Defs.' Br., Ex. 13 (Transfer Agreement).  As part of the Transfer Agreement, AGM&M agreed to honor all of the Assembly's donor requirements.  *See* Transfer Agreement § 1.1.  Following the execution of these agreements, AGM&M acquired the adjacent properties and began to plan for a museum.  The parties heavily dispute what transpired from 2003 to 2006, when Cafesjian and Waters Jr. were managing officers of AGM&M.  Defendants accuse Cafesjian and Waters Jr. of mismanagement, while Plaintiffs contend that disagreements on the Board prevented substantial progress on the development of the Museum.  Cafesjian resigned as Chairman in September 2006 but remained as a Trustee.

In October 2006, Waters Jr. executed a Memorandum of Agreement Reserving Rights ("MOA") between AGM&M and CFF, which he signed on behalf of both parties.  *See* Defs.' Br., Ex. 18 (MOA).  The MOA described in general terms the reversionary interest held by CFF in the Bank Building and adjacent properties pursuant to the Grant and Transfer Agreements. Waters Jr. recorded the MOA with the District of Columbia Recorder of Deeds.  Waters Jr. never informed the Board of Trustees about the MOA.

On April 26, 2007, Cafesjian and CFF filed a complaint against the Assembly in the United States District Court for the District of Minnesota seeking, *inter alia*, rescission of the Grant Agreement and restitution of all donations made.  *See* Defs.' Br., Ex. 21 (Complaint). Cafesjian and CFF sought a declaration that the Assembly had breached the Grant Agreement and sought damages for the failure to reissue the promissory note or repay the $500,000 loan as required by the Grant Agreement.  This case was ultimately dismissed by the court for failure to join a necessary party, AGM&M.

4

On May 2, 2007, Cafesjian resigned from the Board of Trustees and appointed Waters Jr. as CFF's designee on the Board.  On May 7, 2007, the Board of Trustees convened a meeting and held a discussion regarding whether or not Cafesjian and CFF's conduct in filing the action against the Assembly in Minnesota, as well as Waters Jr.'s actions in executing and recording the MOA, had created a conflict of interest and breach of fiduciary duty which prohibited Waters Jr. and/or CFF from participating in the discussions or voting on proposals for going forward with the development of the museum.  The details surrounding what occurred at this meeting are hotly disputed by the parties.  However, it is clear that at some point during the meeting, Waters Jr. disconnected the phone, and the remaining Trustees proceeded with the meeting without him.

On September 28, 2007, CFF filed a derivative lawsuit in this District against AGM&M, the Assembly, and the other Trustees to enjoin AGM&M from developing the museum without participation by trustees from CFF.  *See* Defs.' Br., Ex. 22 (Complaint).

On March 19, 2009, the AGM&M Board called a special meeting by telephone to consider the removal of Waters Jr. as the CFF Trustee and to remove any other CFF-designated successor Trustees as well as CFF's right to act as a Trustee or appoint Trustees.  *See* Defs.' Stmt. ¶¶ 70, 72-73; Pls.' Resp. Stmt. ¶¶ 70, 72-73.  Notice of this meeting was not provided to CFF.  *See* Defs.' Stmt. ¶ 71.  The Trustees present at the meeting discussed issues relating to conflicts of interest between CFF and the business of AGM&M.  Ultimately, the Board of Trustees voted to remove Waters Jr. as a Trustee and to terminate CFF's rights as an initial donor.  Defs.' Stmt. ¶¶ 72-73; Pls.' Resp. Stmt. ¶¶ 72-73.

## II.  LEGAL STANDARD

Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  All underlying facts and inferences are analyzed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier of fact could find for the non-moving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently

probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal

citations omitted).  "Mere allegations or denials in the adverse party's pleadings are insufficient

to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F.

Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply "show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986).  Conclusory assertions offered without any factual basis for

support do not satisfy an opponent's burden to set forth "affirmative evidence" showing a

genuine issue for trial. *Broaddrick v. Exec. Office of the President*, 139 F. Supp. 2d 55, 65

(D.D.C. 2001) (citing *Laningham*, 813 F.2d at 1241).

### III. DISCUSSION

Defendants move for summary judgment on just two counts of the Amended

Complaint—Counts I and VIII.  In Count I, Plaintiffs seek a declaratory judgment that Cafesjian

and Waters Jr. have not breached any fiduciary duty to AGM&M or the Assembly.  In Count

VIII, Plaintiffs seek a declaration that CFF is entitled to remain a Trustee of AGM&M

controlling three votes.  The Court shall briefly address each of these claims below.

A.      *Count I: Breach of Fiduciary Duty by Cafesjian and Waters Jr.*

Defendants contend that they are entitled to summary judgment with respect to Count I

because the record clearly shows that Cafesjian and Waters Jr. breached their fiduciary duty to

AGM&M by filing a Memorandum of Agreement ("MOA") recording Cafesjian's and CFF's

reversionary interests in certain properties owned by AGM&M.  Defendants argue that

Cafesjian's and Waters Jr.'s actions in filing the MOA were impermissible as a matter of law,

unfair to AGM&M, undertaken in bad faith, and unauthorized by the AGM&M Board of

7

Trustees.  Additionally, Defendants argue that Cafesjian and Waters Jr. breached their fiduciary duties to AGM&M by filing a lawsuit in April 2007 for breach of contract against the Assembly and filing another lawsuit in September 2007 to enjoin AGM&M from developing a museum without participation of CFF.  Plaintiffs argue that their fiduciary breach claims rest on disputed facts.

First, with respect to Defendants' argument that Cafesjian and Waters Jr. breached their fiduciary duties to AGM&M by filing the MOA, their arguments are identical to those raised by AGM&M in its motions for summary judgment in *Cafesjian I* and *Cafesjian II*.  In both *Cafesjian I* and *Cafesjian II*, this Court denied AGM&M's motions for summary judgment on this ground, holding that the mere act of filing the MOA itself by Cafesjian and Waters Jr. did not constitute a breach of fiduciary duty as a matter of law but that there were genuine issues of material fact relating to whether Cafesjian's and Waters Jr.'s conduct was undertaken in bad faith.  *See Cafesjian I*, slip op. at 20-33; *Cafesjian II*, slip op. at 22-29.  AGM&M relies on the same facts and arguments here as it did in *Cafesjian I* and *Cafesjian II*, and therefore the Court incorporates the relevant parts of its opinions in those cases in denying Defendants' motion in this case.  The record shows that the MOA merely reflected existing obligations from the Grant and Transfer Agreements, and a reasonable jury might conclude that Waters Jr. and Cafesjian acted in good faith in recording those obligations to ensure that the Properties would be developed into the Museum contemplated by the Grant and Transfer Agreements.  *See, e.g.*, Defs.' Br., Ex. 5 (G. Cafesjian Dep. Tr.) at 308 ("[T]he whole idea of [the MOA], after all, was to save the museum, the whole project.  If something was sold out from under that big footprint that we had agreed to, then it ruins everything."  Ultimately, the finder of fact must decide at trial

8

whether Waters Jr. and Cafesjian acted in good or bad faith.

With respect to the filing of lawsuits in April and September 2007, Defendants' arguments are identical to those raised in *Cafesjian II*.  In *Cafesjian II*, this Court denied AGM&M's motion for summary judgment on this ground, holding that there were disputed issues of material fact regarding whether Cafesjian and Waters Jr. filed the lawsuits in bad faith. The Court incorporates the relevant part of its opinion in *Cafesjian II* in denying Defendants' motion in this case.  A trustee may file a lawsuit against a corporation in order to protect his own interests without breaching his fiduciary duty.  *See Clancy v. King*, 954 A.2d 1092, 1106 (Md. 2007) ("[A] fiduciary may enforce validly obtained legal rights against his or her firm, even if that transaction results in a profit for the fiduciary at the firm's expense.")  However, the trustee must properly balance his own interests with the interests of the corporation.  *See Storetrax.com, Inc. v. Gurland*, 915 A.2d 991, 994, 1004, 1008 (Md. 2007) (holding that a director did not breach his fiduciary duties by, among other things, filing a lawsuit against the corporation and seeking summary judgment by default, but explaining that the director had to strike "the proper balance between [his] claimed legal right . . . [and] fulfill[ing] his fiduciary obligation to act in [the corporation's] best interests," which he did in part by giving notice that the litigation was imminent and advising the corporation on how it could avoid the litigation).  Defendants argue that Cafesjian filed the lawsuits with the aim of delaying progress of the Museum.  However, Cafesjian testified that he filed the April 2007 lawsuit because the Assembly had violated the Grant Agreement, and he explicitly denies ever seeking to delay the Museum project.  *See* Defs.' Resp. Stmt. ¶ 56; Defs.' Opp'n, Ex. P (G. Cafesjian Dep. Tr.) at 176; Defs.' Opp'n, Ex. II (G. Cafesjian Aff.) ¶ 12.  Similarly, the September 2007 lawsuit was based on AGM&M's allegedly

9

improper exclusion of CFF from developing the Museum.  *See* Pls.' Br., Ex. 22 (Complaint filed 9/28/2007).  Based on Cafesjian's testimony and the record as a whole, a reasonable jury may conclude that he was justified in filing the lawsuits to protect the interests he had contracted with AGM&M.[1]

Accordingly, the Court shall deny Defendants' motion for summary judgment with respect to Count I based on disputed issues of material fact.

> B.       *Count VIII: CFF's Status as an AGM&M Trustee*

In Count VIII of the Complaint, Plaintiffs seek a declaratory judgment on two related issues regarding CFF's status as a Trustee of AGM&M.  First, Plaintiffs seek a declaration that CFF is entitled to three votes on the Board of Trustees based on its donations to the corporation.  Second, Plaintiffs seek a declaration that CFF is entitled to remain a Trustee of AGM&M and cannot be removed by the Board.  After this lawsuit was filed, the AGM&M Board of Trustees voted to remove Waters Jr. as a Trustee and terminate CFF's rights as an initial donor entitled to appoint successor Trustees.  Defendants argue that they are entitled to summary judgment on these claims because the record clearly shows that CFF has not made the contributions necessary to obtain three votes on the Board and that the Board acted properly in removing CFF as an entity entitled to appoint Trustees.

With respect to CFF's entitlement to three votes on the Board of Trustees, there is a

---

[1] Plaintiffs have not requested a jury trial in this action.  However, these issues may tried by a jury in *Cafesjian I* or *Cafesjian II*, and the Court shall wait until determinations of liability have been made by a jury before considering whether the award of declaratory judgment is appropriate.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton v. Seven Falls*, 515 U.S. 277, 286 (1995)) (holding that in declaratory judgment actions, courts exercise "unique and substantial discretion in deciding whether to declare the rights of litigants").

dispute in the record regarding what donations may be taken into consideration.  The AGM&M

By-Laws state that each initial donor is entitled to appoint one Trustee for each $5 million

contributed to the corporation, provided that the contributions are accepted by the Board with an

eighty percent vote and the donor appoints a successor Trustee.  *See* Defs.' Br., Ex. 6 (By-Laws)

§ 2.5.  Plaintiffs contend that they have made pledges and actual contributions to the corporation

worth over $15 million and should therefore be entitled to three votes.  *See* Pls.' Opp'n at 30-31.

For example, they have produced a balance sheet for AGM&M indicating that the total value of

money donated to acquire the properties for the Museum was over $16 million.  *See* Pls.' Opp'n,

Ex. F (filed under seal) (AGM&M Balance Sheet) at 1-2.  However, Plaintiffs also indicate in

their answers to interrogatories that they have only advanced $14.7 million to AGM&M.  *See*

Defs.' Br., Ex. 11 (Interrogatory Answers) at 9-10.  Moreover, Plaintiffs argue that the prior

actions of the Board indicate that the number of votes is determined by the amount of funds

pledged, and the Board "accepted" over $15 million in pledged funds through the Unanimous

Written Consent agreement in 2003.  *See id.* at 31-32.  Defendants argue that the By-Laws

require specific Board acceptance of the funds necessary to create additional votes.  Based on the

present record, the Court is unable to determine whether CFF is entitled to three votes.

Accordingly, the Court shall deny Defendants' motion for summary judgment on this ground.[2]

_____

[2] The Court has additional grounds for denying summary judgment as to this claim,
which, if awarded, would effectively constitute a declaration that CFF is not entitled to three
votes.  The award of declaratory relief is left to the Court's sound discretion, and courts will not
award relief where a declaration is of little use to the parties.  In this case, it is unclear what effect
such a declaration would have, because, based on AGM&M's voting structure (requiring 80%
approval for most actions) and the makeup of the Board (with four Trustees), CFF effectively has
a veto over Board actions, regardless of whether it has one, two, or three votes on the Board.  The
Court shall decide whether declaratory relief is appropriate based on a more complete evidentiary
record.

With respect to CFF's right to remain as a Trustee, this Court held in *Cafesjian II* that based on the present record, it is premature to determine whether the declaratory relief might ultimately be appropriate on this issue. *See Cafesjian II*, slip op. at 42-44. The Court reaches the same conclusion in this case. Defendants argue that summary judgment is warranted on this issue because the AGM&M Board of Trustees' removal of CFF as an initial donor at the March 19, 2009, meeting was proper under the By-Laws and is protected by the business judgment rule. *See* Defs.' Br. at 29-32. Plaintiffs disagree.

AGM&M's By-Laws state that "[a]ny Trustee may be removed without cause by the unanimous affirmative vote of the Trustees present at a meeting where a quorum is present, not counting the vote or votes of the Trustee whose removal is the matter to be voted upon with respect either to the existence of a quorum or to the unanimity of the vote." By-Laws § 2.17. However, while this provision may have authorized the removal of Waters Jr. as a Trustee, it does not permit the Board to remove all successor Trustees or terminate CFF's rights as an initial donor to appoint Trustees. The Court notes that the By-Laws may be amended by a unanimous vote of the Trustees, *see* By-Laws § 3.2, but Defendants have not pointed to any evidence in the record to indicate that the By-Laws were in fact amended so as to remove CFF as an initial donor entitled to appoint Trustees in perpetuity. Defendants further argue that the "spirit" of the By-Laws support the Board's decision to terminate CFF's rights as a donor. *See* Defs.' Reply at 20-21. However, the clear terms of the By-Laws provide CFF with the right to appoint successor Trustees. Accordingly, it appears that the By-Laws did not authorize the purported removal of CFF as an initial donor.

Defendants also argue that the business judgment rule protects the Board's decision to

remove CFF as a donor on conflict of interest grounds.  The business judgment rule operates as "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in honest belief that the action was in the best interests of the company."  *Willens*, 844 A.2d at 1137 (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).  "Absent an abuse of direction, that judgment will be respected by the courts."  *Id.*; *see also Gries Sports Enterprises, Inc. v. Cleveland Browns Football Co.*, 496 N.E.2d 959, 964 (Ohio 1986) (applying Delaware law) (explaining that business judgment doctrine protects decisions as well as decision makers).  However, as the name implies, the business judgment rule protects only *business* decisions, not decisions about how to interpret and apply the corporation's by-laws.  *See Lake Monticell Owners' Ass'n v. Lake*, 463 S.E.2d 652, 656 (Va. 1995). Defendants have not persuaded the Court that the vote to remove CFF's rights as a Trustee was a business decision that falls within the ambit of the rule.

Because Defendants have failed to show that there are no disputed issues of material fact and that they entitled to judgment as a matter of law as to Plaintiffs' requested declaratory relief, the Court shall deny Defendants' motion for summary judgment as to Count VIII of the Complaint.  In addition, the Court notes that is premature, based on the present record, to determine whether the award of declaratory relief is necessary in light of the parties' other claims for relief in the three related cases pending before the Court.

//

//

//

//

13

## IV.  CONCLUSION

For the foregoing reasons, the Court shall DENY Plaintiffs' [78] Motion for Partial

Summary Judgment.  An appropriate Order accompanies in this Memorandum Opinion.


Date: March 9, 2010

                    _____/s/_____
                    **COLLEEN KOLLAR-KOTELLY**
                    United States District Judge